EXHIBIT 1

# AMENDED AND RESTATED SUBLEASE AGREEMENT

**1. PARTIES**

This Amended and Restated Sublease Agreement (the "Sublease"), dated 11/9/2022, 2022 is made by and between **Flying Basset Brewing, LLC**, an Arizona limited liability company (collectively, the "Sublessor") and **Philadelphia Sandwich Company, LLC**, an Arizona limited liability company ("Sublessee").

**2. MASTER LEASE**

Sublessor is the lessee under that certain **Lease Agreement** dated May 1, 2017 (the "Master Lease") between Sublessor and the predecessor in interest to current lessor, **720 Ray, LLC**, an Arizona limited liability company ("Lessor"), with respect to that certain real property located at 720 W. Ray Road, City of Gilbert, Maricopa County, Arizona, as more particularly described in the Master Lease ("Master Premises"). The Master Lease is attached hereto as Exhibit B.

**3. PREMISES**

Sublessor hereby subleases to Sublessee on the terms and conditions set forth in this Sublease a portion of the Master Premises only, as depicted in the attached Exhibit A, such premises comprising solely the kitchen and all equipment and small wares on an exclusive basis and the dining room, patio, and parking lot on a shared basis (the "Premises").

**4. WARRANTY BY SUBLESSOR**

Sublessor warrants and represents to Sublessee that the Master Lease and any amendments thereto, all attached as Exhibit B, have not been amended or modified.

**5. SUBLEASE TERM**

The term (the "Sublease Term") of this Sublease shall commence on March 1, 2022 (the "Commencement Date") and shall expire on April 30, 2031, unless otherwise terminated in accordance with this Sublease (the "Termination Date"). If Sublessor permits Sublessee to take possession prior to the commencement of the Sublease Term, such early possession shall not advance the Termination Date and shall be subject to the provisions of this Sublease, including without limitation the payment of Rent.

**6. OPTION TO RENEW LEASE**

In the event that Sublessor exercises its option to renew the Master Lease then Sublessee shall have the option to extend the term of this Sublease for the same period as Sublessor's renewal option. Sublessee shall provide to Sublessor written notice of Sublessee's desire to exercise its extension option at least thirty (30) days prior to the last day of the then current Sublease Term.

**7. RENT**

Sublessee shall pay to Sublessor as minimum rent, without deduction, setoff, notice, or demand, by hand, or at such other place as Sublessor shall designate from time to time by notice to Sublessee, the sum of **Three Thousand Three Hundred Twenty-Five and 17/100 Dollars ($3,325.17)** (the "Rent") per month, which amount is inclusive of base rent, utilities, and rental taxes of any kind, in advance on the fifth (5th) day of each calendar month of the Sublease Term. Sublessee shall be assessed a fee of **Fifty and 00/100 Dollars ($50.00)** for each check that is returned to Sublessor for lack of sufficient funds. Notwithstanding the foregoing, Sublessee shall not be responsible for the payment of Rent during the first thirty (30) days of the Term following the Commencement Date.

**8. UTILITIES**

Sublessee shall be responsible for fifty percent (50%) of the following utilities incurred in the Premises: electric, internet, water, gas, trash, and grease trap pumping ("Utility Charge"). Sublessor shall pay all utility bills and bill Sublessee for the Utility Charge, proving copies of all relevant invoices. Sublessee shall pay the Utility Charge no later than the fifteenth (15th) day of the month following Sublessor's invoice.

**9. ASSIGNMENT AND SUBLETTING**

Sublessee shall not assign this Sublease or further sublet all or any part of the Premises.

**10. RECIPROCAL RIGHTS/SERVICES**

Sublessee shall allow Sublessor access to four (4) tap handles for its beer at Sublessee's restaurant in Scottsdale, Arizona during the Sublease Term at standard wholesale pricing. Sublessee shall provide all marketing material to Sublessor for the food being served at the Premises.

**11. OTHER PROVISIONS OF SUBLEASE**

All applicable terms and conditions of the Master Lease are incorporated into and made a part of this Sublease as if Sublessor were the lessor thereunder, Sublessee the lessee thereunder, and the Premises the Master Premises. Sublessee assumes and agrees to perform the lessee's obligations under the Master Lease during the Sublease Term to the extent that such obligations are applicable to the Premises, except that the obligation to pay Rent to Lessor under the Master Lease shall be considered performed by Sublessee to the extent and in the amount Rent is paid to Sublessorin accordance with Section 6 of this Sublease. Sublessee shall not commit or suffer any act or omission that will violate any of the provisions of the Master Lease. Sublessor shall exercise commercially reasonable efforts in attempting to cause Lessor to perform its obligations under the Master Lease for the benefit of Sublessee. If the Master Lease terminates, this Sublease shall terminate and the parties shall be relieved of any further liability or obligation under this Sublease, provided however, that if the Master Lease terminates as a result of a default or breach by Sublessee under this Sublease and/or the Master Lease, then the Sublessee shall be liable to the Sublessor for any damages suffered as a result of

such termination. Notwithstanding the foregoing, if the Master Lease gives Sublessor any right to terminate the Master Lease in the event of the partial or total damage, destruction, or condemnation of the Master Premises or the building or project of which the Master Premises are a part, the exercise of such right by Sublessor shall not constitute a default or breach hereunder.

12. **DEFAULT**

Sublessee shall be assessed a late fee in the amount of **Two Hundred and 00/100 Dollars ($200.00)** on any payment of Rent that is late by fifteen (15) or more days. If Sublessee shall be in default in the payment of any Rent due hereunder and fails to rectify such monetary default within ten (10) days from the receipt of written notice thereof from Sublessor or if Sublessee shall be in default in the performance of any of the other covenants or conditions hereof and fails to correct and rectify any such default within ten (10) days from the receipt of written notice thereof from Sublessor, unless more time is needed and Sublessee is diligently pursuing a remedy, or if Sublessee shall be adjudicated bankrupt, or make any assignment for the benefit of creditors, or if the interest of Sublessee herein shall be sold under execution or other legal process, Sublessor may, without limiting the Sublessor in the exercise of any right or remedy which the Sublessor may have by reason of such event of default either under this Sublease or at law or equity, enter into said Premises and have and repossess the same and shall thereupon have the right to cancel this Sublease without prejudice, however, to the right of Sublessor to recover all Rent due to the time of such entry. In case of any such default, Sublessor may repossess the Premises and cancel the Sublease without prejudice, Sublessor shall use commercially reasonable efforts to re-let said Premises from time to time during the remainder of the Sublease Term hereof for fair market rent and may recover from Sublessee any deficiency between the actual rent received from such reletting, net of all costs incurred in connection therewith, and the rent herein reserved.

The remedies provided for in this Sublease are in addition to any other remedies now or hereinafter available to the Sublessor at law, in equity, by statute or otherwise under the laws or judicial decisions of the State of Arizona and Sublessor may pursue same.

13. **ATTORNEYS' FEES**

If either Sublessor or Sublessee shall commence an action against the other arising out of or in connection with this Sublease, the prevailing party shall be entitled to recover its costs and expenses of suit and reasonable attorneys' fees from the other non-prevailing party.

14. **USE OF PREMISES**

The Premises shall be used and occupied only for **restaurant** use and for no other use or purpose. Sublessee shall be responsible for maintaining all licenses related to Sublessee's use of the Premises, including, but not limited to, a health department license and a Town of Gilbert business license, during the Term.

15. **INSURANCE AND INDEMNITY**

Prior to taking occupancy of the Premises, Sublessee shall, in accordance with the insuring obligations and requirements of the lessee under the Master Lease, furnish all required insurance certificates evidencing Sublessee's compliance with such obligations and requirements to Sublessor and naming Sublessor and Lessor as additional insureds on such insurance certificates.

Sublessee shall indemnify, defend and hold harmless Sublessor against any and all claims, demands, losses, liabilities, obligations and expenses Sublessor may suffer or incur by reason of any claim asserted by any person (collectively, "Liabilities") arising out of or resulting from (i) the use or occupancy of the Premises or any part thereof by Sublessee or anyone holding under Sublessee or any of their respective agents, contractors or invitees, or (ii) any act, failure to act, neglect or default on the part of Sublessee or its agents, servants, employees or contractors, except, with respect to both of clauses (i) and (ii) above, to the extent that any such Liabilities arise out of or result from the affirmative acts or negligence of Sublessor or its agents, servants, employees or contractors. Sublessee agrees that the foregoing indemnity shall survive the termination of this Sublease notwithstanding any provisions of this Sublease to the contrary.

Sublessor hereby indemnifies, and agrees to protect, defend and hold the Sublessee, its employees, invitees, agents and contractors ("Sublessee Indemnitees") harmless, against any and all actions, claims, demands, liability, costs and expenses, including attorneys' fees and expenses for the defense thereof, arising from Sublessor's operation of the Premises, or the undertaking of any work or repairs to the Premises, or default on the part of Sublessor in the performance of any covenant or agreement on the part of Sublessor to be performed pursuant to the terms of this Sublease, or from any willful act or negligence of Sublessor, its agents, contractors, servants, employees, customers or invitees, in or about the Premises.

Notwithstanding anything to the contrary set forth herein, neither Sublessor nor Sublessee shall be liable (by way of subrogation or otherwise) to the other party (or to any insurance company insuring the other party) and Sublessor and Sublessee hereby waive any claims for any loss or damage to any of the property of Sublessor or Sublessee, as the case may be, with respect to their respective property, the Premises or any addition or improvements thereto, or any contents therein, to the extent covered by property insurance carried or required to be carried by a party hereto EVEN THOUGH SUCH LOSS MIGHT HAVE BEEN OCCASIONED BY THE NEGLIGENCE OR WILLFUL ACTS OR OMISSIONS OF SUBLESSOR OR SUBLESSEE OR THEIR RESPECTIVE EMPLOYEES, AGENTS, CONTRACTORS OR INVITEES (AND WHETHER OR NOT SUCH INSURANCE IS ACTUALLY CARRIED). Sublessor and Sublessee shall give each insurance company which issues policies of insurance, with respect to the items covered by this waiver, written notice of the terms of this mutual waiver, and shall have such insurance policies properly endorsed, if necessary, to prevent the invalidation of any of the coverage provided by such insurance policies by reason of such mutual waiver. For the purpose of the foregoing waiver, the amount of any deductible applicable to any loss or damage shall be deemed covered by, and

recoverable by the insured under the insurance policy to which such deductible relates. Nothing contained in this paragraph shall be deemed to modify or otherwise affect releases elsewhere contained herein of either party from liability for claims.

**16. NOTICES**

All notices and demands which may or are to be required or permitted to be given by either party on the other hereunder shall be in writing. All notices and demands shall be sent overnight mail by a reputable courier service or hand-delivered, addressed to the other party at the address hereinbelow or to such other person or place as either party may from time to time designate in a written notice to the other.

| | |
|---|---|
| To Sublessor: | Flying Bassett Brewing LLC<br>720 West Ray Road<br>Gilbert, Arizona 85233<br>Attn: Robert Gagnon |
| To Sublessee: | Philadelphia Sandwich Company LLC<br>7318 East Stetson Drive<br>Scottsdale, Arizona 85251<br>Attn: Aaron Link |

**17. CONSENT BY LESSOR**

THIS SUBLEASE SHALL BE OF NO FORCE OR EFFECT UNLESS AND UNTIL CONSENTED TO IN WRITING BY LESSOR, IF SUCH CONSENT IS REQUIRED UNDER THE TERMS OF THE MASTER LEASE.

**18. COMPLIANCE**

The parties hereto agree to comply with all applicable federal, state and local laws, regulations, codes, ordinances and administrative orders having jurisdiction over the parties, property or the subject matter of this Agreement, including, but not limited to, the 1964 Civil Rights Act and all amendments thereto, the Foreign Investments in Real Property Tax Act, and The Americans with Disabilities Act.

**19. IMPROVEMENTS**

It is mutually agreed and understood that Sublessee accepts and leases the Premises in an "As-Is, Where-Is" condition. Any damage to the Premises caused by Sublessee will be promptly repaired or replaced at Sublessee's expense.

**20. PARKING**

Parking will be available to Sublessee on a first come first serve basis only.

**21. KEYS AND LOCKS**

Sublessee will be provided a key. If Sublessee loses keys, Sublessee shall pay for the installation of any replacement keys and locks at its own expense.

**22. SUBTENANT REPAIRS**

Sublessee at its own expense shall perform such maintenance, replacement and

repairs to keep the Premises in substantially the same condition as exists on the Commencement Date and, upon Termination, shall deliver possession of the Premises in substantially the same condition as exists on the Commencement Date. Sublessee must notify Sublessor within twenty-four (24) hours of any structural condition requiring maintenance.

**23. MASTER LEASE**

Sublessee represents that it has read and is familiar with all provisions of the Master Lease. Sublessee has consulted with (or had the opportunity to consult with) an independent attorney to advise Sublessee regarding the obligations of Sublessee under this Sublease and the Master Lease. Sublessee may not assign or sublease any interest in the Premises without the prior written consent of Sublessor.

**24. MISCELLANEOUS**

This Sublease shall be construed in accordance with the laws of the State of Arizona. This Sublease contains the entire understanding of the parties hereto and there are no other promises, conditions, understandings, or other agreements, whether oral or written, relating to the subject matter of this Sublease. This Sublease may only be modified or amended in writing and signed by the parties hereto. The provisions of this Sublease shall be binding upon and inure to the benefit of both parties and their respective representatives, successors, and assigns.

**SIGNATURE PAGE FOLLOWS**

IN WITNESS WHEREOF, the parties have executed this Sublease as of the day and year first written above:

SUBLESSOR

**Flying Basset Brewing, LLC**, an Arizona limited liability company

By: DocuSigned by: Robert Gagnon FE2A91830301404...

Name: Robert Gagnon

Its: Manager/Member

By: DocuSigned by: Sara Cotton FE2A91830301404...

Name: Sara Cotton

Its: Manager/Member

SUBLESSEE

**Philadelphia Sandwich Company, LLC**, an Arizona limited liability company

By: DocuSigned by: Aaron Link 80C9F73D1E7B4A3

Name: Aaron Link

Its: Member

## LESSOR'S CONSENT TO SUBLEASE

The undersigned ("Lessor"), lessor under the Master Lease, hereby consents to the foregoing Sublease without waiver of any restriction in the Master Lease concerning further assignment or subletting. Lessor certifies that, as of the date of Lessor's execution hereof, Sublessor is not in default or breach of any of the provisions of the Master Lease, and that the Master Lease has not been amended further or modified except as expressly set forth in the foregoing Sublease.

Lessor is aware that Sublessee's business involves **food preparation.**

Lessor: **720 Ray LLC**, an Arizona limited
liability company

By: Simplified Properties, LLC, a
Nevada limited liability company
Title: Manager

DocuSigned by:

By: ______________________

Name: Sean Katona
Title: Manager

# Exhibit A
(Premises)

Exhibit B

(Master Lease)

**[Attach Master Lease]**

EXHIBIT 2

Clerk of the Superior Court
*** Electronically Filed ***
11/07/2025 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2023-020276 11/04/2025

HONORABLE SCOTT MINDER

CLERK OF THE COURT
M. R. Diaz
Deputy

PHILADELPHIA SANDWICH COMPANY L L C, et al. SARAH N LANGTRY

v.

FLYING BASSET BREWING L L C, et al. MORGAN SEEGMILLER

MARK W HORNE
JUDGE MINDER

ORAL ARGUMENT HELD

East Court Building – Courtroom 711

9:00 a.m. This is the time set for Oral Argument regarding *Plaintiff's Motion For Partial Summary Judgment Re: Breach Of Contract And Conversion*, July 23, 2025. Plaintiffs Philadelphia Sandwich Company, LLC, and Aaron Link are represented by counsel, Mark W. Horne. Defendants Flying Basset Brewing, LLC; Robert Gagnon, and Sara Cotton are represented by counsel of record, Morgan Seegmiller. All participants appear virtually.

A record of the proceedings is made digitally in lieu of a court reporter.

The Court has received and review *Plaintiff's Motion For Partial Summary Judgment Re: Breach Of Contract And Conversion*, July 23, 2025, the Response, the Reply, and all related pleadings thereto.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2023-020276 11/04/2025

Arguments are presented.

Based upon the arguments presented on the record,

**IT IS ORDERED** taking this matter under advisement.

9:52 a.m. Matter concludes.

**LATER:**

ORDER GRANTING SUMMARY JUDGMENT

On July 23, 2025, Plaintiff Philadelphia Sandwich Company move for partial summary judgment on its breach of contract claim and its conversion claim. The Court has reviewed the motion, response, reply, and related statements of facts and docket entries. Oral argument was held on November 4, 2025. The Court now grants the motion.

*Factual Background*

This case involves the removal of Plaintiff, PSC, from the premises owned by former defendant 720 Ray LLC. 720 Ray had leased the property to Defendant Flying Basset Brewing, who then subleased a portion of the space to PSC to serve food. The terms of the sublease agreement were subject to the master lease agreement and required monthly rent payment. PSC was also to pay half of numerous utilities directly to Flying Basset. The sublease agreement requires a written, mailed notice of default be provided to PSC and then PSC would have ten days to cure the default. PSC's SOF at ¶¶ 27-29.

The parties dispute the timeliness of various payments due under the sublease. But the undisputed evidence shows that:

- Flying Basset, on September 28, 2023, hand-delivered a utility bill for the September utilities with a due date of October 15, 2023. Def.'s CSOF at ¶ 3.
- Defendant Gagnon texted PSC's owner, Aaron Link, on October 2, 2023, demanding PSC's share of the September utilities bill and October rent. *Id.* at ¶ 5.
- Mr. Link texted back that same day and stated that neither bills were due. *Id.* at ¶ 6.
- On October 21, 2023, Flying Basset hand-delivered the October utilities statement with a due date of November 15, 2023. *Id.* at ¶ 7.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY



- That same day, Gagnon texted Link requesting the payment that was due six days prior on October 15, 2023. *Id.* at ¶ 8.
- On October 25, Flying Basset emailed a 10-day notice of default to Link, demanding payment of the monies due on October 15, 2023, be paid by October 27. *Id.* at ¶ 9.
- On October 28, Defendant Cotton notified Link that Flying Basset would re-take possession of the rented space on October 29 if no payment was made. *Id.* at ¶ 11.
- Flying Basset locked PSC out of the property on October 31, 2023.

At the time of the lock-out, Flying Basset also took possession of PSC's equipment.

Both parties agree that the master lease between 720 Ray and Flying Basset was in effect for the time period described above.

PSC has sued for breach of contract for being improperly locked out of its leased space on October 31, 2023, and for conversion for loss of possession of its equipment.

*Analysis*

Summary judgment under Rule 56 is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Courts must evaluate the evidence to some extent; i.e., a "motion should be granted if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves*, 166 Ariz. 301, 309 (1990). "In Arizona, a summary judgment motion sets in play shifting burdens. Initially, a party moving for summary judgment has the burden of showing there are no genuine issues of material fact and it is entitled to summary judgment as a matter of law. Only if the moving party satisfies this burden will the party opposing the motion be required to come forward with evidence establishing the existence of a genuine issue of material fact that must be resolved at trial." *National Bank of Arizona v. Thruston*, 218 Ariz. 112, 114-15 (Ct. App. 2008). That said, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 309-10 (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge[.]" *Id.* at 309.

Breach of Contract

The sublease required a written notice, properly mailed, after which PSC would have a minimum of ten days to cure the defect. General complaints about late payments are not

sufficient. Nor are bills indicating that payments will come due soon. Compliance with the sublease agreement is straightforward:

> If Sublessee shall be in default in the payment of any Rent due hereunder and fails to rectify such monetary default within ten (10) days from the receipt of written notice thereof from Sublessor or if Sublessee shall be in default in the performance of any of the other covenants or conditions hereof and fails to correct and rectify any such default within ten (10) days from the receipt of written notice thereof from Sublessor, unless more time is needed and Sublessee is diligently pursuing a remedy . . . Sublessor may . . . enter into said Premises and have and repossess the same and shall thereupon have the right to cancel this Sublease without prejudice . . . .
>
> All notices and demands which may or are to be required or permitted to be given by either party on the other hereunder shall be in writing. All notices and demands shall be sent overnight mail by a reputable courier service or hand-delivered, address to the other party . . . .

Sublease Agreement, Pl.'s SOF at ¶¶ 28, 29 (Agreement paragraphs 12 and 16).

Here, the undisputed facts show that the only proper notice of default occurred on October 25, 2023. Under the sublease, PSC was to receive ten days from October 25, 2023, to cure the default before the lock-out could occur. The lock-out occurred on October 31, 2023, just six days later. Because the lock-out occurred at least four days before Flying Basset was permitted to retake the premises, the lock-out violated the terms of sublease agreement.

The October 21 text message is not a proper notice of default. It may request monies due, but it does not suggest default, provide 10-day notice, or comply with the delivery requirements.

Flying Basset argues that there were prior failures to pay on time, bounced checks, and general knowledge on PSC's part that payments were due or overdue. All of that may be true. But none of it matters absent a proper written notice and the lack of a 10-day cure period. The contract terms are clear and Flying Basset failed to abide by them.

Summary judgment for PSC is therefore appropriate.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2023-020276 11/04/2025

Conversion

"Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 209 Ariz. 462, 472 (Ct. App. 2005). PSC claims that Flying Basset had no basis to maintain possession of PSC's equipment after the lock-out. The Court agrees. At best, Defendants could have held a portion of the property to cover monies owed. But they kept it all without justification.

Defendants essentially concede this point, arguing only that factual disputes over the breach claim preclude summary judgment on the conversion claim. And because the Court has found summary judgment appropriate on the breach claim, Defendants' argument evaporates.

Partial summary judgment is appropriate on the conversion claim, although the precise amount of damages remains unclear due to the accounting discrepancies on the amounts owed by PSC to Flying Basset and the value of the equipment.

Personal Liability for Conversion

PSC also seeks summary judgment on the conversion claims against Defendants Cotton and Gagnon in their roles as the individuals responsible for sending the notice and seizing the equipment for Flying Basset. It cites two unpublished opinions in support, which the Court presumes to be instructive but not binding. Defendants argue against summary judgment based on the same bases as the contract and conversion claims.

"Corporate directors are not personally liable for conversion committed by the corporation or one of its officers merely by virtue of the office they hold. To be held liable, the directors must participate or have knowledge amounting to acquiescence or be guilty of negligence in the management and supervision of the corporate affairs causing or contributing to the injury." *Jabczenski v. Southern Pac. Memorial Hospitals*, 119 Ariz. 15, 20 (Ct. App. 1978). "A director who actually votes for the commission of a tort is personally liable, even though the wrongful act is performed in the name of the corporation. Good intentions are no defense to a conversion." *Id.*

Here, the undisputed facts show that Defendants Cotton and Gagnon decided upon the actions and performed the acts that resulted in the conversion. Both, therefore, are liable for the conversion and are not immune by their place in the corporate entity.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2023-020276 11/04/2025

Summary judgment is appropriate against Cotton and Gagnon for conversion to the same extent as Flying Basset.

*Conclusion*

**IT IS ORDERED** granting the July 23, 2025, *Motion for Partial Summary Judgment*. Damages remain in dispute and will be subject to proof at trial.

EXHIBIT 3

# Gilbert Police Department

## GENERAL OFFENSE HARDCOPY
## (BURGLARY)
## GO# GI 2023-164151

# Table of Contents

Related Event GO# GI 2023-164151 ........ 1
Offense(s) ........ 1
Related Event(s) ........ 2
Related Person(s) ........ 2
1. Victim # 1 - COTTON, SARA MARIE ........ 2
2. Arrestee # 1 - LINK, AARON J ........ 2
3. Involved # 1 - SMITH, SAMANTHA LYNN ........ 3
Related Narrative(s) ........ 5
1. PARKER, DE. (5562), MCAO FELONY CASE FILING - Mcao Felony - Original Case Filing ........ 5
2. PARKER, DE. (5562), CASE NARRATIVE/SUPPLEMENT - Case Narrative/Supplement ........ 6
Related Follow Up(s) ........ 10
1. Follow Up Report # GI 1 - BURRIS, S. ........ 10
2. Follow Up Report # GI 2 - BARMORE, C. ........ 14
Related Clearance Information ........ 16
Related Property Report(s) ........ 17
1. PROPERTY REPORT # 20827 (STOLEN) ........ 17
ARTICLE ........ 17
ARTICLE ........ 17
ARTICLE ........ 17
ARTICLE ........ 17
ARTICLE ........ 18
2. PROPERTY REPORT # 20823 (EVIDENCE/SEIZED) ........ 19
3. PROPERTY REPORT # 20824 (STOLEN) ........ 20
ARTICLE (TAG # GI20824 - 1) ........ 20
ARTICLE (TAG # GI20824 - 4) ........ 20
ARTICLE (TAG # GI20824 - 5) ........ 20
ARTICLE (TAG # GI20824 - 6) ........ 21
ARTICLE (TAG # GI20824 - 7) ........ 21
Related Arrest(s) ........ 22
1. Related Arrest Report AB# GI 2023- 11318 ........ 22

Gilbert Police Department

2023-164151
CLEARED - COUNTY
SUBMITTAL COMPLETE

GENERAL OFFENSE HARDCOPY

*** FOR RELEASE TO PROSECUTION AGENCY ONLY ***

(BURGLARY)

## General Offense Information

| | |
|---|---|
| **Operational Status** | CLEARED - COUNTY SUBMITTAL COMPLETE |
| **Reported On** | OCT-31-2023 1105 |
| **Occurred On** | OCT-31-2023 1105 |
| **Approved On** | OCT-31-2023 (TUE.) |
| **Approved By** | 5740 - SPERRY, E. |
| **Report Submitted By** | 5562 - PARKER, DE. |
| **Org Unit** | PATROL TEAM 01 |
| **Address** | 720 W RAY RD |
| **Municipality** | GILBERT |
| **County** | MARICOPA |
| | **District** CNTRL **Beat** 15 **Grid** H05 |
| **Value Loss** | $716.00 |
| **Value Recovered** | $290.00 |
| **Family Violence** | NO |
| **Cargo Theft** | NO |

*DVLA*

| | |
|---|---|
| **DVLA** | NOT DV RELATED |
| **Redaction Requirements** | *** BELOW *** |
| **Date** | 10-31-2023 |
| **Redaction Type** | PII ONLY (NORMAL REDACTION) |

## Offenses (Completed/Attempted)

| | |
|---|---|
| **Offense #** | 1 220-1 BURGLARY - COMPLETED |
| **Statute** | 13-1506A1 BURGLARY 3RD DEGREE -- COMMERCIAL BUILDING (F) |
| **Location** | RESTAURANT |
| **Suspected Of Using** | NOT APPLICABLE |
| **Bias** | NONE (NO BIAS) |

| | |
|---|---|
| **Offense #** | 2 90Z-10 MONEY LAUNDERING / CRIMINAL SYNDICATE/FINANCIAL CRIME - COMPLETED |
| **Statute** | 13-1505A BURGLARY TOOLS POSSESSION (F) |
| **Location** | RESTAURANT |
| **Suspected Of Using** | NOT APPLICABLE |
| **Bias** | NONE (NO BIAS) |

**Gilbert Police Department**

**GENERAL OFFENSE HARDCOPY**

***** FOR RELEASE TO PROSECUTION AGENCY ONLY *****

**(BURGLARY)**

## Related Event(s)

1. CP GI2023-164151
2. AB GI2023-11318

## Related Person(s)

### 1. VICTIM # 1 - COTTON, SARA MARIE

**Sex** FEMALE
**Race** UNKNOWN
**Date Of Birth** [redacted]
**Address**
**Municipality**
**State**
**ZIP Code**

#### PERSON PARTICULARS

**Ethnicity** UNKNOWN
**Height** 5'08
**Weight** 135 LBS.
**Eye Color** BLUE
**Hair Color** BROWN

#### LINKAGE FACTORS

**Resident Status** [redacted]
**Age Range** 30-49 YEARS
**Victim Of** 220- 1 BURGLARY - COMPLETED

***RELATIONSHIP(S) BETWEEN VICTIM TO OFFENDER(S)***

**Relationship** VICTIM WAS ACQUAINTANCE OR ROOMMATE
**Offender's Name** LINK, AARON, J (DOB: JUL-27-1984)
**Offender's Role** ARRESTEE #1

### 2. ARRESTEE # 1 - LINK, AARON J

**Sex** MALE
**Race** WHITE
**Date Of Birth** JUL-27-1984
**Address** 7318 E STETSON DR
**Municipality** SCOTTSDALE
**State** ARIZONA

**ZIP Code** 85251

## PERSON PARTICULARS

**Ethnicity** NON-HISPANIC/LATINO

**Height** 6'00 **Weight** 230 LBS.

**Build** HEAVY **Complexion** LIGHT

**Eye Color** BLUE

**Hair Color** BROWN

**Facial Hair Color** BROWN **Facial Hair Type** FULL BEARD

## CHARGE SUMMARY

***CHARGE # 1***

**Offense Date** OCT-31-2023 1105

**Offense** BURGLARY 3RD DEGREE -- COMMERCIAL BUILDING (F) - COMPLETED

**Charge Statute** AR 13-1506A1

**Charge Count** 1

**Charge Severity** FELONY

**Domestic Violence** NO

**Bond** $0.00

**Court** M60

## LINKAGE FACTORS

**Resident Status** NON-GILBERT RESIDENT

**Age Range** 30-49 YEARS

**Armed With** UNARMED

**Offense** 220- 1 BURGLARY - COMPLETED

**Arrest Date** OCT-31-2023 (TUE.)

**Arrest Type** PHYSICAL ARREST

## 3. INVOLVED # 1 - SMITH, SAMANTHA LYNN

**Sex** FEMALE

**Race** WHITE

**Date Of Birth** MAY-11-1993

**Address** 801 N FEDERAL ST APT 1143

**Municipality** CHANDLER

**State** ARIZONA

**ZIP Code** 85226-6326

**Personal - Cell Phone Number** (480) 710-1696

Gilbert Police Department

GENERAL OFFENSE HARDCOPY

*** FOR RELEASE TO PROSECUTION AGENCY ONLY ***

(BURGLARY)

## PERSON PARTICULARS

**Ethnicity** NON-HISPANIC/LATINO
**Height** 5'07 **Weight** 145 LBS.
**Eye Color** BLUE
**Hair Color** BLOND

## LINKAGE FACTORS

**Resident Status** GILBERT RESIDENT
**Age Range** 30-49 YEARS

## Narrative Text

**Type** MCAO FELONY CASE FILING
**Subject** Mcao Felony - Original Case Filing
**Author** 5562 - PARKER, DE.
**Related Date** Oct-31-2023 16:25

Case Filing

Officer / Detective Name: PARKER, DE. 5562 10-31-2023

Custody Status: IN - CUSTODY
Defendant(s) Name(s): LINK, AARON J DOB: 07-27-1984

Evidence for this Case Submission
Photos: YES Videos: YES BWC Videos: YES Audio Files: NO
Other Digital Files: NO Physical Evidence Impounded: YES
Axon Fleet Video: NO
Other/Supplemental Notes:

[

## Narrative Text

**Type** CASE NARRATIVE/SUPPLEMENT
**Subject** Case Narrative/Supplement
**Author** 5562 - PARKER, DE.
**Related Date** Oct-31-2023 16:12

Narrative

| | | |
|---|---|---|
| BWC Used: YES | Axon Capture Used: YES | Axon Fleet Video: NO |
| | Axon Digital Used (link sent or data uploaded): YES | |
| Digital Attachments: YES | Actionable LPR Hit Related: NO | |
| DCS/APS Notification Made: NO | CIR Completed by this Officer: NO | |

Officer / Detective Name: PARKER, DE. 5562 10-31-2023

Narrative:
Synopsis:

On October 31, 2023, Aaron Link was contacted at the listed address and found to have committed Burglary and been in possession of Burglary tools. Aaron was arrested, case is cleared by arrest.

Narrative:

On October 31, 2023, I was dispatched to an alarm call. Dispatch advsied the reporting party Sara Cotton, reported Aaron Link was inside her business after being evicted earlier in the morning. Sara advised she subleased part of her building to Aaron to sell food. Aaron was behind in rent and other payments, and Sara reached out via email multiple times.

Ten days prior, Sara told Aaron if he did not settle his debts, he would be locked out of the building. Five days prior Sara sent another email advising Aaron again if he did not pay, he would be locked out of the building. Sara then advised this morning she advised Aaron he was officially evicted and not

allowed in the building. Sara put a large chain with a lock on the front doors, changed the bolt lock on the back door, and changed the code for the security alarm. Posted on the front doors and back door was the same email advising Aaron he was not allowed into the building.

On 10/31/23, Sara called Gilbert Police to report she could see Aaron in real time taking things from the building. I arrived on scene with Ofc Burris and contacted Aaron in front of the building. Aaron advised he used his own key to open the front doors and he was trying to call police because his code to

deactivate the alarm was no longer working.

As we spoke with Aaron, Sara was able to text me copies of all emails, notices, and video of how the door was locked with a chain. These items were uploaded into Evidence.com. Sara also believed items from the kitchen and register area were taken. This box can be seen inside the vehicle Aaron admitted to driving to the scene. The registered owner also comes back to Aaron's wife. The victim also stated a large water cooler with her husband's name was missing and could be seen in Aaron's vehicle as well.

A search of the building and surrounding area also shows the signs Sara had posted on the doors, were found inside a trash can near the back door. Pictures of this were taken and the letters were entered into evidence.

It should be noted, as the victim arrived on scene and video was previewed, Aaron is seen arriving at the location and getting out of his vehicle with bolt cutters. A few minutes later, Aaron is seen walking back to his vehicle with the bolt cutters and chain, then putting them into the vehicle.

At this time, Aaron was arrested and read his Miranda rights. I asked Aaron if he wanted to tell me where the chain that was on the front door went and what was in the box he removed from the building. Aaron remained quiet. Aaron was searched and taken into custody.

At this time, a search warrant (warrant number SW2023-044378 signed by Honourable Cindi S Nannetti of the Maricopa County Superior Court), was issued for Aaron vehicle parked in the parking lot. The search warrant was conducted, and the following items were located.

The green box with cash register items, candles, the metal chain, the lock, clear tubs used in the kitchen, bolt cutters, and mail with Aarons full name on them and a yellow and red water cooler. Items were returned to Sara with the

exception of the bolt cutters, which were placed into evidence.

Copies of all emails, and photos of the vehicle were collected and entered in to Evidence.com.

At this time, Aaron will be charged with ARS 13-1506A1, Burglary in the third degree, for entering and remaining unlawfully inside the business that was locked with chains and notices posted specifically for him not to enter and removing items from the business to his vehicle parked outside.

Aaron is also being charged with ARS 15-1505 possession of burglary tools, for possessing and using bolt cutters to make entry into the building.

Conclusion:
On October 31, 2023, Aaron Link was contacted at 720 W. Ray Rd in Gilbert Arizona. It was reported Aaron was in the building after being formally evicted by his lease owner. There was a large chain with lock on the front doors, the bolt lock on the back door of the building. The building alarm had also been changed and Aarons old code no longer worked. There were also 2 notices on the front door advising Aaron he was not allowed in the building, along with the same two notices on the back door.

The reporting party and lease owner advised they had sent Aaron a ten day, and five-day notice, that if his debt was not paid, he would be locked out and the lease would be void. Copies of all emails exchanged were impounded.

As Aaron entered the building, the alarm went off and the property owner who posted the signs and evicted Aaron, called police advising he was inside and taking items.

Aaron was seen by the victim, via live footage taking a large green box with miscellaneous items from inside the building. The victim believes items from the kitchen and register area were taken. This box can be seen inside the vehicle Aaron admitted to driving to the scene. The registered owner also comes back to Aaron's wife. The victim also stated a large water cooler with her husband's name was missing and can be seen in Aaron's vehicle as well.

It should be noted, as the victim arrived on scene and video was previewed,

**Gilbert Police Department**

**GENERAL OFFENSE HARDCOPY**

***** FOR RELEASE TO PROSECUTION AGENCY ONLY *****

**(BURGLARY)**

Aaron is seen arriving at the location and getting out of his vehicle with bolt cutters. A few minutes later, Aaron is scene walking back to his vehicle with the bolt cutters and chain, then putting them into the vehicle.

The vehicle is parked inward facing North directly into the building and the front doors. The vehicle, a Hyundai Santa FR Hybryd, bearing Arizona License Plate 4DA9HG, returned to Aaron's wife. Aaron also admitted to driving the Santa Fe.

Aaron was contacted on scene and refused to speak. He was arrested and read his Miranda rights. I asked Aaron if he wanted to tell me where the chain that was on the front door went and what in the box he removed from the scene. Aaron remained quiet. Aaron was searched and taken into custody.

At this time, Aaron will be charged with ARS 13-1506A1, Burglary in the third degree, for entering and remaining unlawfully inside the business that was locked with chains and notices posted specifically for him not to enter, and removing items from the business to his vehicle parked outside.

**Gilbert Police Department**

**GENERAL OFFENSE HARDCOPY**

***** FOR RELEASE TO PROSECUTION AGENCY ONLY *****

**(BURGLARY)**



# Follow Up Report # 1

## ASSIGNMENT INFORMATION

| | | | |
|---|---|---|---|
| **Assigned To** | 6206- BURRIS, S. | | |
| **Capacity** | SUPPLEMENTAL | **Org Unit** | PATROL TEAM 01 |
| **Assigned On** | OCT-31-2023 1625 | **By** | 6206 - BURRIS, S. |
| **Report Due On** | OCT-31-2023 (TUE.) | | |

## SUBMISSION INFORMATION

| | | | |
|---|---|---|---|
| **Submitted On** | OCT-31-2023 1623 | | |
| **Approved On** | OCT-31-2023 (TUE.) | **By** | 5740 - SPERRY, E. |

## FOLLOW UP CONCLUSION

**Follow Up Concluded** YES

## Narrative Text

**Type** CASE NARRATIVE/SUPPLEMENT
**Subject** Case Narrative/Supplement
**Author** 6206 - BURRIS, S.
**Related Date** Oct-31-2023 13:51

Narrative

BWC Used: YES Axon Capture Used: YES Axon Fleet Video: NO
Axon Digital Used (link sent or data uploaded): NO
Digital Attachments: NO Actionable LPR Hit Related: NO
DCS/APS Notification Made: NO CIR Completed by this Officer: NO

Officer / Detective Name: BURRIS, S. 6206 10-31-2023

Narrative:

On 10/31/23 at approximately 1105 hours, I was dispatched as a back up Officer

to the listed location reference a burglary. Call comments stated a subject was seen inside the property who had been recently evicted. The subject was also carrying out items from the business.

Upon my arrival with Officer Parker, I observed the front door of the business open and a black SUV with an Arizona License plate of 4DA9HG parked in front. As I walked closer, a male subject was seen exiting the front door wearing a blue shirt and shorts. The male began to wave to me and when I asked him to walk towards me he complied. The male provided his Arizona Driver License, identifying himself as Aaron Link. He also gave me his cell phone and stated the phone showed a lease agreement, listing him as she subleasee.

I asked Aaron how did he get inside the business and he replied "with my key".

I then mentioned the property was secured and locked with more than just a key, and he again told me no, he only used his key to get in.

I remained on scene until about 1226 hours, Officer Parked advised me Aaron was going to be placed under arrest. While being placed in handcuffs, he requested his property go with his wife who was on scene, sitting in a vehicle. Aaron gestured to a vehicle nearby and I contacted a female who verbally identified herself as Aaron's wife, Samantha Smith. His property was provided to her at

Aaron's request. She was also informed Police would be holding the car keys due

to a search warrant being completed on the vehicle. She understood and left the area.

While waiting on scene. Sgt. Minson informed me eviction notice paperwork had been located on the east side of the business, near the side entrance in a

trash can. I located the trash can and noticed 4 pieces of papers, which appear

to be eviction paperwork with tape on it, was crumbled up. Photos of the papers and the location were taken using AxonCapture and later uploaded to evidence.com.

A short time later, Sara Cotton and her husband Robert (NFI) arrived on scene. Sara and Robert are owners of the property. I asked Robert and Sara to enter the property with me and they complied. I then requested to be shown any surveillance footage they have when Aaron arrived. Robert escorted me upstairs to a surveillance room where I observed the following: At about 1048 hours,

Aaron is seen arriving at the business in his vehicle in front of the property. Aaron appears to exit his vehicle with bolt cutters and walks to the fron entrance. After a few seconds, he is seen walking back to his vehicle with a chain and placing the chain within the rear driver side door. The camera footage then suddenly shuts off after a few minutes.

A video recording using AxonCapture was taken of the surveillance footage. Robert advised a copy of the footage will be made for Police during a later time.

I stayed on scene with Officer Parker and assisted with searching the vehicle

after the search warrant was approved. While searching the vehicle, I located a metal chain with a lock underneath the driver seat vehicle. I also located a bolt cutter placed underneath the rear driver side passenger seat. Officer Parker took photos of the items and documented them in her report.

A short time later, Samantha was contacted and advised to return to obtain the keys to the vehicle. At about 1455 hours, she arrived and the keys were released to her.

This concludes my involvement.

# Follow Up Report # 2

## ASSIGNMENT INFORMATION

| | | | |
|---|---|---|---|
| **Assigned To** | 101328- BARMORE, C. | | |
| **Capacity** | SUPPLEMENTAL | **Org Unit** | IN TRAINING OFFICER |
| **Assigned On** | OCT-31-2023 1752 | **By** | 101328 - BARMORE, C. |
| **Report Due On** | OCT-31-2023 (TUE.) | | |

## SUBMISSION INFORMATION

| | | | |
|---|---|---|---|
| **Submitted On** | OCT-31-2023 1750 | | |
| **Approved On** | OCT-31-2023 (TUE.) | **By** | 5740 - SPERRY, E. |

## FOLLOW UP CONCLUSION

**Follow Up Concluded** YES

## Narrative Text

**Type** CASE NARRATIVE/SUPPLEMENT
**Related Person** (Arrestee #1) LINK, AARON, J (DOB: Jul-27-1984)
**Subject** LINK, AARON DOB: 07-27-1984
**Author** 101328 - BARMORE, C.
**Related Date** Oct-31-2023 17:46

Narrative

BWC Used: YES  Axon Capture Used: NO  Axon Fleet Video: NO
Axon Digital Used (link sent or data uploaded): NO
Digital Attachments: NO  Actionable LPR Hit Related: NO
DCS/APS Notification Made: NO  CIR Completed by this Officer: NO

Officer / Detective Name: BARMORE, C.  101328  10-31-2023

Narrative:
On 10/31/2023 at approximately 1106 hours I was dispatched to reports of an activation of an Armed Robbery Alarm at an address in Gilbert. Call comments updated by Gilbert Police Dispatch stated the property owner was watching live video surveillance from inside the building and stated there was a subject inside the building who should not be there. The subject, later identified as

Aaron Link via his Arizona Driver's License, had recently been evicted from the

building. Upon my arrival to the scene Officer Parker was already speaking with Aaron. As Officer Parker investigated, I stood by with Aaron. Officer Parker later informed me there was Probable Cause to arrest Aaron for Burglary and I placed Aaron under arrest and placed him handcuffs (double locked) and conducted a search of his person. Aaron requested all his property be handed over to his wife (NFI) and property was subsequently handed over to his wife. Aaron was then transport to Gilbert Chandler Unified Holding Facility (GCUHF) where the booking procedures were completed, and custody of Aaron was then handed over to GCUHF staff. This concludes my involvement.

Gilbert Police Department

GENERAL OFFENSE HARDCOPY

*** FOR RELEASE TO PROSECUTION AGENCY ONLY ***

(BURGLARY)

GO# GI 2023-164151
CLEARED - COUNTY
SUBMITTAL COMPLETE

## Clearance Information

| | |
|---|---|
| **Agency** | GILBERT PD |
| **Cleared Status** | CLEARED BY ARREST OR CITATION - NOT APPLICABLE |
| **Cleared On** | OCT-31-2023 (TUE.) |
| **Complainant/Victim Notified** | NO |

# Related Property Report(s)

## REPORT INFORMATION

**Property Report #** 20827
**Case Status** STOLEN
**Submitted On** OCT-31-2023 **By** PARKER, DE.

***RELATED EVENTS***

**Offense** GO GI 2023 - 164151

**Related Items** 5

## ARTICLES

**Status** STOLEN
**Article** HOTHER- HOUSEHOLD APPLIANCES AND HOUSEWARES
**Serial # 1** UNKOWN
**Value** $100.00
**Description** COOKING TUBS
**Current Location** (LOCATION UNKNOWN)

## ARTICLES

**Status** STOLEN
**Article** HOTHER- HOUSEHOLD APPLIANCES AND HOUSEWARES
**Serial # 1** UNKNOWN
**Value** $10.00
**Description** METAL CHAIN
**Current Location** (LOCATION UNKNOWN)

## ARTICLES

**Status** STOLEN
**Article** ELOCK- EQUIPMENT, MEASURING DEVICES, AND TOOLS
**Serial # 1** UNKNOWN
**Value** $75.00
**Description** METAL LOCK
**Current Location** (LOCATION UNKNOWN)

## ARTICLES

**Status** STOLEN

**Article** HOTHER- HOUSEHOLD APPLIANCES AND HOUSEWARES
**Serial # 1** UNKNOWN
**Value** $200.00
**Description** CANLDES FRO FOOD
**Current Location** (LOCATION UNKNOWN)

## ARTICLES

**Status** STOLEN
**Article** OWATERC- OFFICE EQUIPMENT
**Serial # 1** UNKNOWN
**Value** $30.00
**Description** RED AND YELLOW WATER COOLER
**Current Location** (LOCATION UNKNOWN)

## REPORT INFORMATION

**Property Report #** 20823

**Case Status** EVIDENCE/SEIZED

**Submitted On** OCT-31-2023 **By** PARKER, DE.

***RELATED EVENTS***

**Offense** GO GI 2023 - 164151

**Related Items** 2

## REPORT INFORMATION

**Property Report #** 20824
**Case Status** STOLEN
**Submitted On** OCT-31-2023 **By** PARKER, DE.

*RELATED EVENTS*

**Offense** GO GI 2023 - 164151

**Related Items** 5

## ARTICLES - EVIDENCE

**Status** STOLEN
**Tag #** GI20824 - 1
**Article** OWATERC- OFFICE EQUIPMENT
**Serial # 1** UNKNOWN
**Value** $30.00
**Description** YELLOW AND RED WATER COOLER
**Location** IN VEHICLE
**Recovered Date** OCT-31-2023 **Recovered Value** $30.00
**Flags** EVIDENCE
**Current Location** (LOCATION UNKNOWN)

## ARTICLES - EVIDENCE

**Status** STOLEN
**Tag #** GI20824 - 4
**Article** HOTHER- HOUSEHOLD APPLIANCES AND HOUSEWARES
**# Of Pieces** 2
**Serial # 1** UNKNOWN
**Value** $60.00
**Description** CLEAR BUCKETS
**Location** IN VEHICLE
**Recovered Date** OCT-31-2023 **Recovered Value** $60.00
**Flags** EVIDENCE
**Current Location** (LOCATION UNKNOWN)

## ARTICLES - EVIDENCE

**Status** STOLEN
**Tag #** GI20824 - 5
**Article** HOTHER- HOUSEHOLD APPLIANCES AND HOUSEWARES
**# Of Pieces** 40

| | |
|---|---|
| **Serial # 1** | UNKNOWN |
| **Value** | $200.00 |
| **Description** | COOKING CANDLERS (HANDY WIK) |
| **Location** | IN VEHILCE |
| **Recovered Date** | OCT-31-2023 |
| **Recovered Value** | $200.00 |
| **Flags** | EVIDENCE |
| **Current Location** | (LOCATION UNKNOWN) |

## ARTICLES - EVIDENCE

| | |
|---|---|
| **Status** | STOLEN |
| **Tag #** | GI20824 - 6 |
| **Article** | HOTHER- HOUSEHOLD APPLIANCES AND HOUSEWARES |
| **Serial # 1** | UNKNOWN |
| **Value** | $0.00 |
| **Description** | BASKET FULL OF MISC CASH REGISTER ITEMS |
| **Location** | IN VEHICLE |
| **Recovered Date** | OCT-31-2023 |
| **Flags** | EVIDENCE |
| **Current Location** | (LOCATION UNKNOWN) |

## ARTICLES - EVIDENCE

| | |
|---|---|
| **Status** | STOLEN |
| **Tag #** | GI20824 - 7 |
| **Article** | JOTHER- SPECIAL DOCUMENTS, FOOD STAMPS, AND TICKETS |
| **Serial # 1** | UNKNOWN |
| **Value** | $10.00 |
| **Description** | METAL CHAIN |
| **Location** | VEHICLE |
| **Recovered Date** | OCT-31-2023 |
| **Flags** | EVIDENCE |
| **Current Location** | (LOCATION UNKNOWN) |

## Related Arrest Report AB# GI 2023- 11318

| | |
|---|---|
| **Arrestee** | LINK, AARON |
| **Date Of Birth** | JUL-27-1984 |
| **Related CD#** | 11566 |

## Arrest Information

| | |
|---|---|
| **Status** | MCAO/JP - NEW CHARGES - I/C (FELONY) |
| **Type Of Arrest** | PHYSICAL ARREST |
| **Reason For Arrest** | NO, NON-DUI RELATED |
| **Arrest Date** | OCT-31-2023 1226 |
| **Rush File Required** | NO |
| **Booked Into Cell** | YES |
| **Arrest Agency** | GILBERT PD |
| **Arresting Officer(s)** | 101328 - BARMORE, C., - GILBERT PD |
| **Summary Of Facts** | ARREST |

***ARREST LOCATION***

| | | | |
|---|---|---|---|
| **Address** | 720 W RAY RD | | |
| **Municipality** | GILBERT | | |
| | **District** CNTRL **Beat** 15 **Grid** H05 | | |
| **SODA Zone** | NO | **Drug Free Zone** | NO |

### ADDITIONAL ARREST INFORMATION

| | | | |
|---|---|---|---|
| **Case Screened** | NO | | |
| **Notify Victim On Release** | NO | | |
| **Juvenile** | NO | | |
| **Armed With** | UNARMED | | |
| **Diversion Recommended** | NO | | |
| **Interpreter Needed** | NO | | |
| **Rights Given** | YES | **By** | 5562 - PARKER, DE. |
| **Response To Rights** | SILENT | | |
| **Mental Exam Required** | NO | | |
| **Statement Taken** | NO | | |
| **Fingerprinted** | NO | **Photo Taken** | NO |
| **CD Updated** | NO | | |
| **Family Notified** | NO | | |
| **Family Notified** | NO | | |
| **Lawyer Called** | NO | | |

**Meal Given** NO    **Coffee Given** NO

**Detained** NO

*** END OF HARDCOPY ***

EXHIBIT 4

Hkb Industries Llc
720 W Ray Rd
Gilbert AZ 85233-8442

0106

Date 10-2-23

Pay to the Order of Flying Basset $ 3,684.14

Three Thousand Six Hundred Eighty Four 14/100 Dollars

Arizona Financial
PO Box 60070
Phoenix, AZ 85082-0070

Memo October Rent 2023

⑆322172797⑆ 100900200104 71⑈0106

For Deposit Only - JPMC

Flying Basset Dreams

EXHIBIT 5

**COMMERCIAL LOCKOUT NOTICE TO:**

DATE 10/31/23

TO: **Philadelphia Sandwich Co and/or DBA Link Industries**

RE: As of 10/31/23, debt owed in the amount of $2,796.53 has not be collected. You are delinquent in your September utilities which constitutes a breach in contract. This is your notice in pursuant to A.R.S. § 33-361 that Flying Basset Brewing is terminating your right to possession of the premises.

8. UTILITIES

"Sublessee shall be responsible for fifty percent (50%) of the following utilities incurred in the Premises: electric, internet, water, gas, trash, and grease trap pumping ("Utility Charge"). Sublessor shall pay all utility bills and bill Sublessee for the Utility Charge, proving copies of all relevant invoices. Sublessee shall pay the Utility Charge no later than the fifteenth (15th) day of the month following Sublessor's invoice."

12. DEFAULT

"…If Sublessee shall be in default in the payment of any due hereunder and fails to rectify such monetary default within ten (10) days from the receipt of written notice thereof from Sublessor **or if Sublessee shall be in default in the performance of any** of the other covenants or conditions hereof and fails to correct and rectify any such **default within ten (10) days from the receipt of written notice…"**

A.R.S. § 33-361 provides that when your rent **or any debt owed is in arrears for five (5) days**, your landlord may re-enter the property and take possession without formal demand. The law further provides that Flying Basset Brewing, at its option, may institute an action for recovery of the premises. Pursuant to Paragraph 8 and 12 of your lease, you were granted 10 days to cure the above delinquency without resolve. Flying Basset Brewing has the **option** to reinstate your lease, but **will not exercise this option**. Further, under A.R.S. § 33-1023, Flying Basset Brewing has the option of securing a lien upon as much personal property of yours located on the premises and not exempted by law as is necessary to secure the payment of the debt. If your debt is not paid and satisfied within twenty (20) days after seizure, Flying Basset Brewing may sell

the seized property in the manner prescribed in A.R.S. § 33-1021. Do not remove any property as such action will be considered an illegal trespass.

Invoices hand delivered for September utilities:

First invoice, #3218 was hand delivered on September 28, 2023 to 720 W. Ray Rd, Gilbert, AZ accepted by S Williams.

Second invoice was hand delivered on October 21, 2023 to 720 W. Ray Rd, Gilbert, AZ 85223, accepted by S Williams.

Emails were sent to linkindustries@gmail.com, and phillysandwichco@gmail.com on 10/25/2023.

Invoice hand delivered for October utilities:

First invoice, was hand delivered on October 21, 2023 to 720 W Ray Rd, Gilbert, AZ 85233, accepted by S Williams.

**Payment of both September and October invoices must be paid by cashier check prior to entrance granted to retrieve property. Your sub lease with Flying Basset Brewing is terminated.**

This is an attempt to collect a debt. Any information obtained will be used for that purpose. Unless you dispute the validity of the debt, or any portion thereof, within thirty days of receipt of this letter, it will be assumed to be valid. If the dispute is received in writing, debt verification, or a copy of the judgment, will be obtained and mailed to you. If requested in writing within thirty days of receipt of this letter, the original creditor's name and address will be provided. Pursuant to 15 U.S.C. § 1692E(11), please be advised that this communication is from a landlord, property manager or Sublessor which may, in this case, be acting on behalf of a debt collector.

Service of this notice may be accomplished via regular mail, certified mail, hand-delivery, process server, etc.; the five days to tender payment shall commence after the first notice is received and shall not be extended if additional copies of this notice are subsequently received.

EXHIBIT 6

Clerk of the Superior Court
*** Electronically Filed ***
T. Alameda, Deputy
3/27/2024 3:55:48 PM
Filing ID 17565355

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

Misty Fauth
Deputy County Attorney
Bar ID #: 025732
225 W Madison St, 2nd Floor
Phoenix, AZ 85003
Telephone: (602) 372-6070
trldiv@mcao.maricopa.gov
MCAO Firm #: 00032000
Attorney for Plaintiff

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| THE STATE OF ARIZONA,<br><br>Plaintiff,<br><br>vs.<br><br>AARON J LINK,<br><br>Defendant. | CR2023-149734-001<br><br>STATE'S MOTION AND ORDER TO DISMISS AND QUASH WARRANT OR SUMMONS<br><br>(Assigned to the Honorable Michael W Kemp, Div. SAJ12) |

The State of Arizona, pursuant to Rule 16.4, Arizona Rules of Criminal Procedure, moves to dismiss CR2023-149734-001 without prejudice and quash warrant or summons as to AARON J LINK for the reason that:

Defendant provided documentation that he had paid rent for the month in question. That was confirmed by the victim. Therefore, it is in the interest of justice to dismiss this case.

This Motion is not for the purpose of avoiding Rule 8, Arizona Rules of Criminal Procedure.

Submitted March __27__ 2024.

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

BY: /s/Misty Fauth________
Misty Fauth
Deputy County Attorney

Copy e-mailed/e-filed March __27_, 2024, to:

The Honorable Michael W Kemp
Judge of the Superior Court

Raeanna Blackburn
620 W Jackson St Ste 4015
Phoenix, AZ 85003 raeanna.blackburn@maricopa.gov
Attorney for Defendant

Criminal Court Administration
Superior Court, Maricopa County

BY: /s/Misty Fauth________
Misty Fauth
Deputy County Attorney

mf

EXHIBIT 7

Clerk of the Superior Court
*** Electronically Filed ***
04/02/2024 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2023-149734-001 DT 04/01/2024

HONORABLE MICHAEL W. KEMP

CLERK OF THE COURT
M. Cabral
Deputy

STATE OF ARIZONA

v.

AARON J LINK (001)

MISTY FAUTH

RAEANNA BLACKBURN

DISPOSITION CLERK-SCT
JUDGE KEMP

MINUTE ENTRY

The Court has received and considered State's Motion to Dismiss and Quash Warrant or Summons.

IT IS ORDERED dismissing CR2023-149734-001 against Aaron J. Link without prejudice and quash warrant or summons; all in accordance with the Order signed by Court on March 28, 2024 and filed (entered) by the Clerk on April 1, 2024.

IT IS FURTHER ORDERED vacating all pending dates.

Note: There is no active or summons in this matter.

EXHIBIT 8

## PUBLIC RECORDS REQUEST

**Purpose** PUBLIC RECORDS REQUEST
**Date Released** SEP-26-2024 1019
**Released By** 100923-COLE,M

### RELEASED TO

**Name** AARON LINK,

### GENERAL RELEASE INSTRUCTIONS

GPDR 2024-17808

# Gilbert Police Department

## GENERAL OFFENSE HARDCOPY
## (FALSE INFO / FALSE REPORTING / PERJURY / JUDICIAL)
## GO# GI 2024-48257

## Table of Contents


Related Event GO# GI 2024-48257 ..... 1

Offense(s) ..... 1

Related Event(s) ..... 2

Related Person(s) ..... 2

- 1. Involved # 1 - LINK, AARON J ..... 2
- 2. Investigative Lead # 1 - COTTON, SARA MARIE ..... 2

Related Narrative(s) ..... 4

- 1. FELAND, A. (5830), CASE NARRATIVE/SUPPLEMENT - Case Narrative/Supplement ..... 4

Related Follow Up(s) ..... 7

- 1. Follow Up Report # GI 1 - FELAND, A. ..... 7
- 2. Follow Up Report # GI 2 - FELAND, A. ..... 8
- 3. Follow Up Report # GI 3 - FELAND, A. ..... 10

Related Clearance Information ..... 13

**Gilbert Police Department**

**GENERAL OFFENSE HARDCOPY**

**PUBLIC RECORDS REQUEST**

**(FALSE INFO / FALSE REPORTING / PERJURY / JUDICIAL)**

**GO# GI 2024-48257**
**INACTIVE - NO PROSECUTION DESIRED/NO PC FOR ARREST**

## General Offense Information

| | |
|---|---|
| **Operational Status** | INACTIVE - NO PROSECUTION DESIRED/NO PC FOR ARREST |
| **Reported On** | APR-04-2024 1338 |
| **Occurred On** | OCT-31-2023 1105 |
| **Approved On** | APR-15-2024 (MON.) |
| **Approved By** | 3668 - DYAS, A. |
| **Report Submitted By** | 5830 - FELAND, A. |
| **Org Unit** | PATROL TEAM 01 |
| **Address** | 720 W RAY RD |
| **Municipality** | GILBERT |
| | **District** CNTRL **Beat** 15 **Grid** H05 |
| **Family Violence** | NO |
| **Cargo Theft** | NO |

***DVLA***

| | |
|---|---|
| **DVLA** | NOT DV RELATED |
| **Redaction Requirements** | *** BELOW *** |
| **Date** | 04-15-2024 |
| **Redaction Type** | CID CASE (ADDITIONAL REDACTION NEEDED) |

## Offenses (Completed/Attempted)

| | |
|---|---|
| **Offense #** | 1 90Z-16 COURT ORDER / COURT RELATED OFFENSES / FALSE REPORTING - COMPLETED |
| **Statute** | 13-2907.01A FALSE REPORT TO LAW ENFORCEMENT (M) |
| **Location** | RESTAURANT |
| **Suspected Of Using** | NOT APPLICABLE |
| **Bias** | NONE (NO BIAS) |

## Related Event(s)

1. CP GI2024-48257

## Related Person(s)

### 1. INVOLVED # 1 - LINK, AARON J

**Sex** MALE
**Race** WHITE
**Date Of Birth** [redacted]
**Address**
**Municipality**
**State**
**ZIP Code**
**Personal - Cell Phone Number**
**Email**

#### PERSON PARTICULARS

**Ethnicity** NON-HISPANIC/LATINO
**Height** 6'00 **Weight** 230 LBS.
**Eye Color** BLUE
**Hair Color** BROWN

#### LINKAGE FACTORS

**Resident Status** NON-GILBERT RESIDENT
**Age Range** 30-49 YEARS

### 2. INVESTIGATIVE LEAD # 1 - COTTON, SARA MARIE

**Sex** FEMALE
**Race** UNKNOWN
**Date Of Birth** [redacted]
**Address**
**Municipality**
**State**
**ZIP Code**
**Personal - Cell Phone Number**
**Email**

## PERSON PARTICULARS

**Ethnicity** UNKNOWN
**Height** 5'08 **Weight** 135 LBS.
**Eye Color** BLUE
**Hair Color** BROWN

## LINKAGE FACTORS

**Resident Status** NON-GILBERT RESIDENT
**Age Range** 30-49 YEARS

Gilbert Police Department
GENERAL OFFENSE HARDCOPY
PUBLIC RECORDS REQUEST
(FALSE INFO / FALSE REPORTING / PERJURY / JUDICIAL)

GO# GI 2024-48257
INACTIVE - NO PROSECUTION DESIRED/NO PC FOR ARREST

## Narrative Text

**Type** CASE NARRATIVE/SUPPLEMENT
**Subject** Case Narrative/Supplement
**Author** 5830 - FELAND, A.
**Related Date** Apr-15-2024 11:52

Narrative

BWC Used: YES    Axon Capture Used: NO    Axon Fleet Video: NO
Axon Digital Used (link sent or data uploaded): NO
Digital Attachments: YES    Actionable LPR Hit Related: NO
DCS/APS Notification Made: NO    CIR Completed by this Officer: NO

Officer / Detective Name: FELAND, A.    5830    04-15-2024

Narrative:
Synopsis:

On April 4th, 2024, Aaron reported to the Gilbert Police Department that Sara Cotton had made a false Police report last year resulting in his arrest.

Narrative:

On April 4th, 2024, at approximately 1338 hours, I was advised by Sergeant Dyas that he had spoken to Aaron Link previously and Aaron wanted to file a Police Report. I spoke to Aaron over the phone and advised him I would be taking his report. I let Aaron know I would be calling him on Monday, April 8th, 2024, as my shift was nearly over. Aaron was fine with this and told me he would be available on April 8th.

On April 8th, 2024, I attempted to call Aaron several times, but I was unable to reach him, nor was I able to leave a message. On April 15th, 2024, at

approximately 0602 hours, I was able to reach Aaron by telephone and he told me the following:

On October 31st, 2024, Aaron was arrested after gaining entry into his location

he subleased from Sara Cotton. Sara lied and told Gilbert Police that Aaron had

been evicted, and he was breaking into the business. Aaron had been leasing the

space for approximately 2 years and signed an amended lease agreement with Sara on 10/24/2022. For the month of October 2023, Sara shut her business down as she was selling to a different business. During the time Sara's business was shut down, Aaron continued to work out of the location doing catering orders.

Per the lease agreement, Aaron would pay approximately $3600 per month in rent, and he would pay half of the utility bills that Sara received. Each month

Sara's accountant would provide Aaron the utility bills so he would know he was only paying half. The last utility bill Aaron received, did not include the

utility invoices but he did pay the utility bill for September 2023. Aaron last paid his monthly rent on October 2nd, 2023.

When Aaron went to his business on October 31st, 2023, he noticed the back door was screwed shut. When Aaron went to the front of the building, he noticed his chain that he used for his smoker in the back of the business, was wrapped around the front door. The chain was not locked, so he took the chain off the door and entered the front door via his key. Once inside the business, Aaron was unable to disarm the alarm as his code was no longer working. Aaron opened his phone and discovered he had received an email from Sara earlier in the

morning stating he was locked out of the business for non-payment of utilities. When Gilbert Police arrived on scene, Aaron showed his proof of identity and his lease agreement. Aaron was ultimately arrested after Sara told Police he had been evicted and was trespassing when he entered the business. Please see GO23-164151 for further on Aaron's arrest. Sara did not provide utility invoices, per the lease agreement, so that is why Aaron had not yet paid that month's utility bill. Sara stated to Police that Aaron was behind on his rent, but Aaron has a copy of the check Sara signed for the rent. Sara wanted Aaron

out of the building, and as a result she lied to the police to get him arrested and off the premises.

Aaron emailed be a copy of his amended lease agreement between him and Sara Cotton, as well as the lock-out notice he received via email. Aaron also emailed me a copy of his October rent check which shows Sara signed the back. All of the documents Aaron emailed me have been uploaded to Evidence.com.

Aaron had approximately $100,000 in equipment which were either sold by Sara to the new owners of the business or kept in storage.

Conclusion:

On April 4th, 2024, Aaron reported to the Gilbert Police Department that Sara Cotton had made a false Police report last year resulting in his arrest.

Follow-up will be conducted to determine if Sara Cotton did make a false police report.

This case is active.

# Follow Up Report # 1

## ASSIGNMENT INFORMATION

| | | | |
|---|---|---|---|
| **Assigned To** | 5830- FELAND, A. | **Rank** | POLICE OFFICER |
| **Capacity** | LEAD INVESTIGATOR | **Org Unit** | PATROL TEAM 01 |
| **Assigned On** | APR-15-2024 1318 | **By** | 3668 - DYAS, A. |
| **Report Due On** | JUN-17-2024 (MON.) | | |

## SUBMISSION INFORMATION

| | | | |
|---|---|---|---|
| **Checked By** | 3668 - DYAS, A. | | |
| **Approved On** | MAY-26-2024 (SUN.) | **By** | 3668 - DYAS, A. |

## FOLLOW UP CONCLUSION

**Follow Up Concluded** YES

# Follow Up Report # 2

## ASSIGNMENT INFORMATION

**Assigned To** 5830- FELAND, A.
**Capacity** SUPPLEMENTAL
**Assigned On** MAY-16-2024 1405
**Report Due On** MAY-16-2024 (THU.)

**Org Unit** PATROL TEAM 01
**By** 5830 - FELAND, A.

## SUBMISSION INFORMATION

**Submitted On** MAY-16-2024 1341
**Approved On** MAY-16-2024 (THU.)

**By** 3668 - DYAS, A.

## FOLLOW UP CONCLUSION

**Follow Up Concluded** YES

## Narrative Text

**Type** CASE NARRATIVE/SUPPLEMENT
**Subject** Case Narrative/Supplement
**Author** 5830 - FELAND, A.
**Related Date** May-16-2024 7:08

Narrative

BWC Used: NO    Axon Capture Used: NO    Axon Fleet Video: NO
Axon Digital Used (link sent or data uploaded): NO
Digital Attachments: NO    Actionable LPR Hit Related: NO
DCS/APS Notification Made: NO    CIR Completed by this Officer: NO

Officer / Detective Name: FELAND, A.    5830    05-16-2024

Narrative:

On May 8th, 2024, I received 29 BWC videos from GO23-164151 to review. At this

time, I have not reviewed the BWC videos. Follow-up will be conducted to review the BWC video footage to determine if Sara Cotton did in fact make a false Police Report.

This case remains open

# Follow Up Report # 3

## ASSIGNMENT INFORMATION

| | | | |
|---|---|---|---|
| **Assigned To** | 5830- FELAND, A. | | |
| **Capacity** | SUPPLEMENTAL | **Org Unit** | PATROL TEAM 01 |
| **Assigned On** | MAY-22-2024 0836 | **By** | 5830 - FELAND, A. |
| **Report Due On** | MAY-22-2024 (WED.) | | |

## SUBMISSION INFORMATION

| | | | |
|---|---|---|---|
| **Submitted On** | MAY-22-2024 0825 | | |
| **Approved On** | MAY-22-2024 (WED.) | **By** | 3668 - DYAS, A. |

## FOLLOW UP CONCLUSION

**Follow Up Concluded** YES

## Narrative Text

**Type** CASE NARRATIVE/SUPPLEMENT
**Subject** Case Narrative/Supplement
**Author** 5830 - FELAND, A.
**Related Date** May-22-2024 8:12

Narrative

BWC Used: YES Axon Capture Used: NO Axon Fleet Video: NO
Axon Digital Used (link sent or data uploaded): NO
Digital Attachments: NO Actionable LPR Hit Related: NO
DCS/APS Notification Made: NO CIR Completed by this Officer: NO

Officer / Detective Name: FELAND, A. 5830 05-22-2024

Narrative:
Aaron Link had reported that Sara Cotton had made a false police report when she reported to Police that Aaron was evicted from his business after falling

behind on rent and was trespassing after entering the business on October 31st, 2024. Because of this false report to Police, Aaron claimed he was falsely arrested on October 31st, 2023 -GO23-164151.

After reviewing Officer Parker's report, speaking to involved Officers, and reviewing the BWC footage of the incident, I learned that arresting Officer

Parker deemed she had probable cause that Aaron was properly served an eviction notice and therefore had entered the building illegally. I further reviewed Officer Parker's telephone conversation with Sara Cotton where she did not state to Police that Aaron was behind on rent, but instead stated that Aaron was 16 days past due. From my previous conversation with Aaron, he stated he had not paid utilities, but that was because he never received the utility invoices to prove he was only paying half the utility bill per their lease agreement.

On May 22nd, 2024, at approximately 0629 hours, I attempted to contact Aaron Link via phone, but I was unable to reach him. I left a voice message with

Aaron requesting he call me back so I can update him on the status of this case

On May 22nd, 2024, at approximately 0644 hours, Aaron Link returned my phone call. I asked Aaron to clarify what exactly Sara told Police which would constitute false reporting. Aaron told me that not only did Sara state Aaron was behind on rent, she also represented herself to Police as the landlord,

which is not accurate. Aaron explained he was subleasing from Sara Cotton, who was leasing from the landlord, and therefore she had no legal authority to evict him as she was not the landlord.

After reviewing the BWC footage again of the conversation with Officer Parker and Sara Cotton, I did not hear Sara cotton state she was the landlord. After reviewing the narrative Officer Parker wrote, she never included in the report that Sara was or claimed to be the landlord, only that Aaron Link was

subleasing from Sara Cotton. According to A.R.S. title 33 definitions, landlord is defined as: "Landlord" means the owner, lessor or sublessor of the dwelling unit or the building of which it is a part, and it also means a manager of the premises who fails to disclose as required by section 33-1322. Knowing the definition of landlord, even if Sara Cotton did represent herself as the landlord, that would not appear to be problematic. Even so, I have seen no evidence to support Sara Cotton had stated she was the landlord, which in Aaron's mind is the owner of the building.

In conclusion, I was unable to determine that Sara Cotton made a false report to Gilbert Police on October 31st, 2023.

I called Aaron Link back on May 22nd, 2024, at approximately 0755 hours to update him on the disposition of the case. Aaron Link asked why Officer

Parker's report stated that Aaron link was behind on rent and utilities if Sara never mentioned rent on BWC. I told Aaron I did not know the answer to that

question but after reviewing all BWC and Officer Parker's report I did not have probable cause that Sara Cotton had made a false report to Gilbert Police Department. Aaron Link advised me he was disappointed to hear this and would

consider legal options against Gilbert Police Department and involved Officers.

This case is cleared unfounded.

## Clearance Information

| | |
|---|---|
| **Agency** | GILBERT PD |
| **Cleared Status** | NOT APPLICABLE - NOT APPLICABLE |
| **Cleared On** | MAY-22-2024 (WED.) |
| **Cleared By Officer 1** | 5830 - FELAND, A. |
| **Org Unit** | P01 - PATROL TEAM 01 |
| **Complainant/Victim Notified** | NO |

*** END OF HARDCOPY ***